IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 16-428 |
| | : | |
| DAVID T. SHULICK | : | |

**DEFENDANT'S TRIAL MEMORANDUM**

Defendant, David Shulick, by and through undersigned counsel, provides this memorandum to assist the Court with respect to some of the issues raised in the government's Trial Memorandum, and to alert the Court to other anticipated issues.[1]

**I.   The Government May Not Introduce Business Records Through an Agent or Other Unqualified Witness**

At page 28 of its Trial Memorandum, the government addresses documentary evidence obtained from Mr. Shulick's offices that it will "seek to admit." The government then proceeds to discuss not the *admissibility* of such evidence, but its *authentication*. As the Court is well aware, the two concepts are distinctly different. A document may satisfy the Rule 901(a) requirement that evidence be authentic (*i.e.,* what it purports to be), yet nonetheless be inadmissible for any number of reasons: it is not relevant (Rule 401); its prejudicial value outweighs any probative value (Rule 403); it is hearsay, or it contains hearsay (Rule 801); etc.

The parties are discussing stipulations as to the authenticity and admissibility of certain documents and sets of documents. Undoubtedly the authentication and/or admissibility of

---

[1]   To the extent that certain issues are raised in the government's Trial Memorandum that are not addressed herein, defendant in no way accedes to or waives his right to object to the government's position on those issues. Some issues will be (or have been) raised and addressed during trial and/or in other filings.

certain evidence will be resolved by stipulation, and the authentication and/or admissibility of other evidence will be left for the Court to resolve at trial.  Mr. Shulick has already identified to the Court certain evidence that should be excluded under Rule 403, and expects to raise similar objections to certain other evidence both before and during trial.

The government focuses its Trial Memorandum discussion (Section C) on records obtained from Mr. Shulick's office.  **It is therefore important to note the difference between records found on a server in Mr. Shulick's office, and records that satisfy the requirements of the business records exception to the hearsay rule, Rule 803(6).**  The two are not equivalent.

To satisfy the requirements of Rule 803(6), the record must have been "(A) made at or near the time by someone with knowledge, (B)… kept in the course of a regularly conducted activity of a business; (C)…making the record was a regular practice of that activity;…and (D) "all these conditions [must be] shown by the testimony of the custodian or a qualified witness, or by [a 902(11) certification]. Fed.R.Evi. 803(6).   Undoubtedly, some of the documents on the DVHS servers would (with proper foundational testimony) satisfy the business records exception, and other documents would not.  **The government attempts to subvert this obvious fact by implying that any record that the government happens to think is a "routine business communication" is admissible simply because it came from the DVHS server.  This is not the law.**

In criminal cases, the Third Circuit has strictly applied Rule 803(6) to forbid the introduction of business records through a government agent unless the agent is familiar with the business' record keeping system and lays a proper foundation for each element of Rule 803(6). *See United States v. Pellulo*, 964 F.2d 193, 201-02 (3d Cir. 1992)(reversing conviction where

2

agent "did not purport to have familiarity with the [banks'] record-keeping system…nor…attest to any of the other requirements of Rule 803(6)."); *United States v. Blakeslee*, 423 Fed. Appx. 136, 142-43 (3d Cir. 2011)(abuse of discretion to admit business records through agent where agent "neither made the [admitted] record nor had the personal knowledge of its creation necessary for him to testify as to the elements required"). Thus (as an example), even if bank records were found on Mr. Shulick's server, the documents could not be admitted as business records unless there were (a) a stipulation as to their admissibility; (b) a 902(11) certification by a qualified person that the records meet the requirements of Rule 803(6); or (c) testimony that satisfies the foundational elements of Rule 803(6). **The government's suggestion that the records would be admissible as business records simply because an agent (or other witness) testifies that they were found on a business server is flatly wrong.**

      To satisfy Rule 803(6), business records must be introduced through a witness who has "familiarity with the record-keeping system" and can attest "that the records were made contemporaneously…by someone with knowledge of the subject matter, that they were made in the regular course of business, and that such records were regularly kept..." *Pelullo*, 964 F.2d at 201-202. Admitting business records through an agent not only would violate a fundamental evidentiary rule but would give the documents an imprimatur of reliability and completeness – an unfair "bootstrap" where the required foundation is missing. See *Pellulo*, *Blakeslee*.

      It is also important to bear in mind that certain records may satisfy the requirements of the business records exception, yet be inadmissible in whole or in part for any number of reasons -- hearsay statements within the records ("hearsay within hearsay") upon which the government

seeks to rely for the truth of the matter asserted; the lack of probative value; or the unfair prejudice that outweighs the document's probative value. [2]

### II. Defendant May Impeach Fattah, Jr. Even If the Government Is Not Brave Enough to Call Him as a Witness

Although it obviously could call Chaka Fattah Jr. as a live witness, the government knows that he is untrustworthy and untruthful.  The government therefore intends to rely on hearsay statements by Fattah – introduced as statements of a co-conspirator or agent under Rule 801(d)(2)(D) or (E).   But as defense counsel has pointed out (with respect to the Amato tape)(see Defendant's Response to Government's Consolidated Motions, at 9-13)(DE 128), the government is WRONG when it thinks it can admit *any* statement of Fattah – even if it was not in furtherance of the alleged conspiracy, or made as an "agent or employee on a matter within the scope of that relationship and while it existed."  The Court should not countenance this improper application of the rules, and should be vigilant to the government's improper efforts in this regard.

**And if the government thinks that introducing Fattah's statements *in absentia* under Rule 801(2) will protect him from impeachment – it is simply dreaming.   Rule 806 expressly provides that when a hearsay statement is admitted under Rule 801(d)(2)(C), (D), or (E), the declarant's credibility may be attacked just as if he had testified in person**:

> When a hearsay statement — or a statement described in Rule 801(d)(2)(C), (D), or (E) — has been admitted in evidence, **the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness.** The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it.

---

[2] Rule 805 requires that if there is hearsay within hearsay, "each part of the combined statements" must conform with an exception to the hearsay rule.

4

Fed.R.Evi. 806 (emphasis added).

**III. The Government Misstates Both the Law and the Facts Concerning the Proffers**

**1. In Contrast to the Proffers in the Cases Cited by the Government, the Proffer Waiver Only Applies to Defendant's Testimony or Representations Through Counsel**

A proffer letter must be interpreted according to its terms, as the cases cited by the government repeatedly point out. Yet in attempting to constrain defendant's cross examination of witnesses, the government inappositely cites a raft of cases that deal with proffer waiver provisions different from – ***and much broader than*** -- the waiver provision in this case.

The proffer letter here provides for a waiver only if the defendant "testifies or *makes representations* through counsel materially different from statements made or information provided during the "off the record" proffer…" Exhibit A to Government's Trial Memorandum (emphasis added). In contrast, the proffer letter in *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008) was from the District of New Jersey and was (in the Court's words) **"expansive."** It provided that proffer protections were waived upon "*any evidence or arguments* offered on [the defendant's] behalf."

Similarly, the waiver language in the cases the government cites from other circuits were broader than the waiver language here. See *United States v. Krilich*, 159 F.3d 1020, 1024 (7th Cir. 1998)(waiver triggered by testimony or "*otherwise presenting a position* inconsistent with the proffer"); *United States v. Rebbe*, 314 F.3d 402 (9th Cir. 2002)(waiver triggered by "any evidence, argument *or* representations offered by or on behalf of [defendant]"). Here, counsel is constrained from making *representations*, but not from eliciting "any evidence," offering "any

5

…argument" or "otherwise presenting" a position.   The cases the government cites are inapposite.[3]

Cross examination is the natural and honest evolution of the truth.  Questions by counsel are not "representations."  Indeed, the Court will instruct the jury that questions by attorneys are not evidence.  They serve to question the witness' credibility and the substantive basis for his or her testimony.  They serve to reveal inadequacies in the government's proof.  They are designed to elicit the truth.  In the process of questioning the witness' credibility, or the witness' basis for his or her testimony, or in questioning the sufficiency or validity of evidence presented through the witness, testimony may be elicited that in some way could be said to be inconsistent with something the defendant may have said.  **BUT THIS DOES NOT CONVERT LEGITIMATE CROSS EXAMINATION INTO "RERESENTATIONS BY COUNSEL"** that trigger a waiver of the proffer.

In claiming that defense counsel cannot "***elicit testimony*** which is contrary to, or materially different from" admissions in the proffer (Gov. Trial Memo at 34)(emphasis added), the government flatly overstates the waiver provision and invites the injection of constitutional error into the trial.  Asking questions that "elicit testimony" when cross examining a witness to discern the truth is a far cry from a "representation through counsel."

Significantly, the government relies on Second Circuit cases but omits the most recent – and most relevant – Second Circuit case, in which a conviction was reversed due to a district

---

[3]   Although the waiver provision in *United States v. Hogeland*, 2006 U.S. Dist. LEXIS 74505 (EDPA October 13, 2006)(Diamond, J) was the same as the provision here, Judge Diamond based his decision on cases involving broader proffer language and a case discussing "standard" proffer letter language, noting that any distinctions among the cases was not litigated before him – "Hogeland has not even tried to distinguish this case from those I have discussed." Id. at *9-10.

6

court's over-expansive interpretation of the proffer letter.   In *United States v. Rosemund*, 841 F.3d 95 (2d Cir. 2016), the proffer waiver provision was broader than the waiver provision here, with waiver being expressly triggered by "*any evidence offered or elicited*, or factual assertions made, by or on behalf of [the defendant]." *Id.* at 102.   **Even under this broader waiver provision, the Second Circuit found reversible error where the district court interpreted the provision to bar defense counsel from asking questions on cross-examination that (the government contended) "implicitly asserted" something different than the proffer statement.**

The Second Circuit held that this restriction was a violation of the defendant's Sixth Amendment rights.   Noting that "the line between challenging the sufficiency of the Government's evidence and implicitly asserting new facts can be a fine one," the Court concluded that **questions having the purpose of casting doubt on a witness' credibility did not trigger the waiver, even if they could be said to "implicitly" contradict the proffer:**

> To be sure, implicit in questions and arguments regarding witness fabrication, perception, or recollection will often be the claim that the event did not occur the way the Government suggests.   **Absent an affirmative assertion of fact contradicting the proffer agreement, however, such questions will usually be insufficient to trigger the "factual assertion" requirement of the proffer waiver**.

Id. at 109.

Similarly, in *United States v. Oluwanisola*, 605 F.3d 124 (2d Cir. 2010) the Second Circuit found reversible error where the district court interpreted the proffer waiver as being triggered by questions challenging witnesses' recollection of the events – **questions which the government argued could *also* be construed as "implicit factual assertions."**   These cases are instructive, especially since the waiver provision at issue here is less restrictive than the provisions in *Rosemund* and *Oluwanisola*.

7

To constrain cross examination in the manner the government suggests would violate Mr. Shulick's Sixth Amendment rights.

### 2. The Government's List Contains Assertions that Are Not "Admissions"

The government has listed two pages of assertions it believes were "admissions" at the proffers. But there are many problems with its list, including:

(1) There is a wide divergence between what is in the written reports and the rough notes;

(2) Many of the statements as to what Mr. Shulick "realized" or "knew" refer to his state of mind *at the time of the proffers* – after learning facts from the prosecutors themselves, or others – and do not address what he knew at the time of the alleged offenses;

(3) Some go to Mr. Shulick's mental state or what Mr. Shulick "should have known" – questions to be answered by the jury, and which cannot be answered by witnesses on cross examination.

The government has produced rough notes for each of the proffers. Since numerous agents were at the proffers, the government should confirm that they have produced all agent notes for the proffers. The government should also be required to turn over the rough notes for all of its interview reports, for all witnesses, since the agents' credibility would in issue if the Court allows proffer statements to be introduced.

### IV. The Government's Proposal for Seriatim Agent Testimony Is Inappropriate, Unnecessary and Would Be Unfairly Prejudicial

Admitting that proposed agent testimony could be presented "in a single appearance," the government nonetheless proposes to insert the testimony of multiple agents at multiple points throughout the trial.  Gov. Trial Memo at 22.  What the government proposes is essentially mini-summations that collect, summarize, and explain evidence grouped and separated in the way the government would like the jury to view it.   This government tactic has no legitimate place in this trial.   It was developed for complex, lengthy, multi-defendant cases involving multiple, factually distinct scenarios and charges.   Indeed, the government strongly opposed defendant's motion for severance by arguing that the three "frauds" were "related."  See DE 29.   Now it wants separate mini trials on each set of charges in the Indictment.   The government only gets one shot at the apple.  If the government wanted separate testimony, it should have filed separate indictments.

This is a single defendant case in which the evidence as to the different charges overlaps -- *as the government itself has repeatedly pointed out in pre-trial filings*.    The various charges do not involve different or extensive periods of time, in contrast to the *Edelin* case the government cites.  This is not a "complex conspiracy case" – it involves two alleged conspirators committing one alleged fraud.   (The *Johnson* case cited by the government involved six defendants and multiple separate and independent drug transaction, involving different combinations of conspirators.)  Evidence on the tax charges directly overlaps evidence relevant to the alleged school fraud. And the bank fraud ties into the school facts, too — the basis of the government's allegation that the letter to the bank was false involves Chaka Fattah Jr.'s employment at the school.

There is simply no valid reason to divide agent testimony and insert it a multiple points in the trial.  This would prolong the trial for the sole (and unfair) benefit of the government and would essentially allow the government to present multiple mini-summations.  Perhaps the Court would entertain defense summation inserted throughout the government's case, also?  If this is a ludicrous suggestion, so too is the government's proposal.

Given the government's proposal, the Court should be wary.  This also appears to be an attempt on the part of the government to present improper "overview" testimony by agents. While an agent may tell what was done in an investigation, it is improper for a law enforcement witness to "to tell 'the story of the conspiracy according to the Government.'" *U.S. v. Napoli*, 2012 WL 4459584 (E.D.Pa 2012) citing *United States v. Figaro,* 126 F. App'x 75, 78 (3d Cir.2005)(non-precedential).   Given the way the government has described what it intends to do, there is a significant danger that the agent's testimony will cross the line from the "story of the investigation" to the "story of the conspiracy."

**V.      Summary Exhibits that Implicitly Evaluate, Endorse and Repeat Witness Testimony Should Not Be Admitted Into Evidence**

The government presents hornbook law to the Court on summary exhibits, failing to disclose that its likely summaries are not simply generic presentations of the contents of documents too voluminous for the jury to review.   For example, the Revenue Agent's summaries (which the defense has not yet seen) will undoubtedly reflect the agent's evaluation of witness testimony (an aspect to which the defense has objected), intermeshed with an evaluation of documents and tax law.

Evaluating the credibility and contents of witness testimony and documentary evidence, and applying the law, is the function of the jury - not government agents.  The Court should not

allow the government to usurp or unfairly influence the jury's function by admitting such summaries into evidence so that the jury can look at what is essentially the government's summation in the jury room whenever it wants. Perhaps, in fairness, if it wants its summation in the jury room, the government should concede that a written defense closing should be provided to the jury too?

Indeed the very case cited by the government to explain the difference among types of summary exhibits warns that **"[a]llowing *any* document with elements of argument to enter the jury room creates "the functional equivalent of a mini-summation…every time the jurors look[] at it during their deliberations…."** *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998). Summary exhibits that implicitly evaluate, integrate and endorse witness testimony, or combine elements of fact and law, are *the essence of argument.*

The Court should not allow the government to abuse its already overwhelming influence on the jury by allowing the government to present "multiple" agent testimony or by admitting "summary" exhibits containing elements of argument to be admitted into evidence.

Respectfully submitted,

_____
HOPE C. LEFEBER
Hope C. Lefeber, LLC
1500 JFK Boulevard, Suite 1205
Two Penn Center
Philadelphia, PA 19106
610.668.7927
*hope@hopelefeber.com*


_____
ANN C. FLANNERY
Law Offices of Ann C. Flannery, LLC
1835 Market Street, Suite 2700

> Philadelphia, PA 19103
> 215.636.9002
> *acf@annflannerylaw.com*
>
> Attorneys for David T. Shulick

## CERTIFICATE OF SERVICE

I, Ann C. Flannery, counsel for defendant David Shulick, hereby certify that on this 10th day of April 2018, I caused a true and correct copy of the foregoing Defendant's Trial Memorandum to be served by ECF upon all counsel of record, including the following:

Michael T. Donovan
U.S. Attorney's Office, Criminal Division
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476
Michael.Donovan@usdoj.gov

Christopher J. Mannion
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
christopher.mannion@usdoj.gov

/s/ _____
ANN C. FLANNERY
Law Offices of Ann C. Flannery
1835 Market Street, Suite 2700
Philadelphia, PA 19103
215.636.9002
acf@annflannerylaw.com