```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :        CRIMINAL ACTION
                                  :
          v.                      :
                                  :
DAVID T. SHULICK                  :        NO. 16-428
```

MEMORANDUM

Bartle, J.                                          June 16, 2020

The Court has before it the emergency motion of defendant David Shulick for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

I

On May 8, 2018, following a three week jury trial, defendant, a then practicing lawyer, was found guilty of: one count of conspiracy to embezzle from a program receiving federal funds in violation of 18 U.S.C. § 371; one count of embezzling funds from a program receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A); one count of bank fraud in violation of 18 U.S.C. § 1344; one count of making a false statement to a bank in violation of 18 U.S.C. § 1014; and three counts of filing false tax returns for tax years 2009, 2010, and 2011 in violation of 26 U.S.C. § 7206(1).

This court sentenced defendant to 60 months imprisonment to be followed by three years of supervised release. Defendant thereafter filed a timely notice of appeal of his conviction and

sentence. The appeal is now pending before our Court of Appeals.

On May 15, 2020 defendant filed a pro se motion for compassionate release from prison and on May 21, 2020 his newly retained attorney submitted supplemental briefing on the motion. Defendant is currently serving his sentence at the United States Penitentiary at Lewisburg, Pennsylvania ("Lewisburg").

II

The Government first argues that this court does not have jurisdiction to grant the relief requested. The Supreme Court has ruled, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). In his reply in support of his motion for release, defendant concedes that we do not have jurisdiction:

> [p]rocedurally, therefore, it is recognized that that [sic] Mr. Shulick's underlying conviction and sentence is under appeal, and that this Court does not have jurisdiction to order his release from incarceration.

Nonetheless, his reply asks this Court to "enter an indicative ruling that it would grant this Motion for Compassionate Release upon remand." This Court may do so under Rule 37(a)(3) of the Federal Rules of Criminal Procedure, even

though the case is on appeal.  Under Rule 37(a), the court may also defer ruling on the motion, deny the motion, or state that it raises a substantial question.[1]  The validity of defendant's conviction and sentence, and thus the issue of his possible release, is now in the hands of the Court of Appeals.  Accordingly, this court does not have jurisdiction to decide his pending motion for compassionate release.

### III

The defendant, as noted above, requests under Rule 37(a) that this court opine that it would grant his motion if the court had jurisdiction.  If this court states it would do so, the Court of Appeals may remand for further proceedings under Rule 12.1 of the Federal Rules of Appellate Procedure.[2]

---

[1]   Rule 37 of the Federal Rules of Criminal Procedure provides, in relevant part: (a) Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
    (1) defer considering the motion;
    (2) deny the motion; or
    (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

[2]   Rule 12.1(b) states, in relevant part:  "[i]f the district court states that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal."

In support of his motion, defendant relies on section 3582(c)(1)(A)(i) as recently amended by the First Step Act. It provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>     (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>         (i)  extraordinary and compelling reasons warrant such a reduction
>         . . .
>
> and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Defendant has exhausted his administrative remedies, and we turn first to section 3582(c)(1)(A)(i). It contains one of the elements that a defendant must meet to obtain a reduction in sentence. It provides that a court may order compassionate release for "extraordinary and compelling reasons" but only if

4

the reduction in sentence is "consistent with applicable policy statements of the Sentencing Commission."

Congress has also enacted 28 U.S.C. § 994(t) which provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The application note 1(A) of section 1B1.13 of the Sentencing Guidelines explains that "extraordinary and compelling reasons" exist where the defendant is: (1) "suffering from a terminal illness" including among others "advanced dementia"; (2) "suffering from a serious physical or medical condition"; (3) "suffering from a serious functional or cognitive impairment"; or (4) "experiencing deteriorating physical or mental health because of the aging process."  The latter three grounds also require that the impairment "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

Defendant asserts that "extraordinary and compelling reasons exist to justify [his] release" because he is "at an

5

extremely high risk of death due to his lifelong asthma and history of pneumonia." Specifically, he claims that his motion should be granted because: (1) the COVID-19 pandemic presents "a danger to [his] safety" given his underlying health issues; (2) his release date is near; and (3) compassionate release does not violate or offend the factors favoring a reduction of sentence under section 3553(a) because he is "not a danger to the community." With respect to the pandemic, Shulick provides extensive information about the potential dangers to those in prison facilities who cannot engage in social distancing or take other salutary measures necessary to mitigate the spread of coronavirus.

First, defendant asserts that his "asthma constitutes suffering from a serious medical condition." He maintains that his asthma, in conjunction with his "markedly overweight, and nearly obese" physical condition presents additional risk factors. Defendant argues that since "COVID-19 is a novel virus" "it would be realistic for the court to consider the entirety of [his] circumstances to justify shortening his sentences." He further represents that he suffers from "chronic and severe asthma" and submits supporting documents from the Center for Disease Control and Prevention that state "moderate to severe asthma" places a person at an elevated risk if they contract COVID-19. Defendant also presents the court with a

6

letter from a physician, Dr. Seema Bonney, who evaluated him before he was incarcerated 19 months ago.  That letter states that he has a history of "severe asthma and has had multiple Emergency Department visits as a result of this pulmonary condition."  Finally, defendant notes that he was "hospitalized at 22 for his asthma after an attack" and that he has physical restrictions from allergies to outside work due to "respiratory issues and cleaning chemical allergies."

        The Government disputes defendant's characterization that his asthma is severe.  According to the Government, he has "mild asthma" which has been "well-controlled during his incarceration."  In the Government's view, his medical records show no new asthma attacks and that his asthma is being treated by the Bureau of Prisons.  During his incarceration, he has been "issued a total of three Albuterol prescriptions" and "six inhalers."  None of these medications has been used consistently.  The Government further notes that while defendant asserts that "his asthma history was incorrectly described as minor" by Bureau of Prisons staff, he had the opportunity to challenge and correct this diagnosis.  On May 5, 2020, in preparation for this motion, he sought and received from Lewisburg a copy of his medical file.  He then complained that the medical records understated the severity of his asthma. Subsequently, the Health Services Department responded "[b]ased

7

upon your status, you would most likely meet the mild category." He is otherwise "ambulatory and engages in all normal activities of daily living."

Defendant claims that the medical records to which the Government refers are incorrect and that his "complaints and requests [regarding the records] were routinely dismissed." On May 28, 2020, Shulick filed a declaration in which he stated, "on May 22, 2020 [he] received a single page, unsigned Memorandum from Health Services . . . which read, in pertinent part: '. . . YOUR ASTHMA IS NOT CONTROLLED . . . .'" Shulick did not submit the unsigned letter to the court for review. On June 1, 2020, defendant's counsel filed another supplemental declaration from defendant that states, "Mr. Shulick completed a new asthma test" on June 1, 2020. According to the supplemental declaration, the results of the test show that defendant "only had a 55% peak flow capacity of his lung function" which falls within the "classification of severe . . . chronic, persistent asthma."

It is significant that defendant's physician's declaration does not address his current health condition. It is not clear from the physician's declaration what her specialty is, whether she actually treated defendant for asthma, or when she last treated him. Even assuming the physician treated defendant for asthma just before he was incarcerated, her

8

diagnosis is based on information regarding his health from 19 months ago.  Significantly, she does not confirm his contention that he is "at an extremely high risk of death due to his lifelong asthma and history of pneumonia."

We now have updated and comprehensive Bureau of Prisons medical records which paints a different picture.  There is no evidence that defendant ever sought or received treatment while incarcerated for any asthmatic episode.  He has been taking his prescribed medications and has access to an inhaler to be used "as needed."  According to Bureau of Prisons health reports, defendant's "only hospitalization for asthma was 15 years ago."  Furthermore, defendant had the opportunity to share with the court evidence regarding his health during his sentencing hearing.  If his condition is as severe as he contends, it is surprising that he did not present any testimony or other evidence at the time pertaining to any diagnosis of asthma or any pulmonary condition.

The Court is, of course, mindful of the devastating worldwide pandemic and the special dangers the highly contagious coronavirus poses for the defendant and all others in prison.  However, the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease.  See United States v. Roeder, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020).  The Bureau of

9

Prisons, including Lewisburg, has in place protocols to deal with this disease and the Attorney General has issued two directives to the Bureau of Prisons concerning early release of inmates.  While the court is aware of one reported case of COVID-19 involving a staff member at Lewisburg, it has been reported to the court that no cases of coronavirus have appeared so far among inmates at Lewisburg where defendant is detained.

Based on the current record, defendant has not established that his asthma constitutes a serious medical condition as defined in the Sentencing Guidelines.  The serious medical condition under the Sentencing Guidelines must be an impairment which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  Defendant clearly does not meet this requirement.

Even if he has the requisite serious medical condition, the Court's analysis does not end here.  Section 3582(c)(1)(A) requires the Court to consider the "factors set forth in section 3553(a) to the extent they are applicable" before the Court may reduce his sentence.  These factors include the need to:  "reflect the nature and circumstances of the offense and the history and characteristics of the defendant"; "reflect the seriousness of the offense"; "promote respect of the law"; and "afford adequate deterrence to criminal conduct."

In this regard, defendant claims that he should be granted compassionate release because his release date is near. He asserts that he "has already served 18 months in federal prison" and is expected to serve only an "additional 10 months in prison." According to defendant, he is "scheduled to be released on or around March 20, 2021." On the other hand, the Government reports that the "Bureau of Prison projects that Shulick will be released on February 28, 2023, but may become eligible for home detention on August 31, 2022." His projection is based on his belief that he will: (1) earn all of his good time credit; (2) successfully complete the RDAP program; and (3) be assigned to home confinement immediately upon becoming eligible. However, there is no guarantee that any or all of these expectations will materialize. Defendant's projections are mere speculations without any evidentiary support.

Moreover, this court cannot ignore the seriousness of defendant's convictions for embezzlement, fraud, and filing false tax returns. At the time of his crimes, defendant was a lawyer with an active practice in Philadelphia. His embezzlement included funds from the School District of Philadelphia. During his sentencing hearing, this court noted that defendant's crimes "harmed many of our neediest and most vulnerable people in the city of Philadelphia." Defendant even used his family charity to commit tax fraud. His crimes

11

continued over a period of time and were not an aberration. While defendant has served 19 months thus far for his crimes, there is still a substantial amount of time remaining in defendant's 60-month sentence.  Releasing defendant now would cut his current sentence by well over half and would not appropriately reflect the nature and circumstances of his offenses, promote just punishment, or afford adequate deterrence to criminal conduct.  See section 3553(a).

Defendant argues that he is not a danger to the community because the "rehabilitative goals of the sentence continue to be satisfied."  He reports that he:  (1) completed "drug and alcohol courses for past addictive and self-harming behavior"; (2) attended "spiritual and self-regulation programs"; (3) "served as an instructor and GED tutor" for educational courses; and (4) is taking part in a Residential Drug Abuse Program.  If released, he has "strong family ties, a wife and two children."  The court accepts defendant's representation that he has partaken in opportunities to better others.  While the court applauds defendant for any strides he has made toward rehabilitation, these factors alone do not allow for his release.  Under 28 U.S.C. § 994(t), Congress has made it clear: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release.  In any event, his rehabilitation, good

works, and lack of danger to the community do not outweigh other section 3553(a) factors which support the need for him to serve the sentence imposed.

The Court, taking all the relevant facts into account, finds that David Shulick has not established extraordinary and compelling reasons that warrant his entitlement to compassionate release.  While this Court does not have jurisdiction to grant the relief requested, it states, pursuant to Rule 37(a) of the Federal Rules of Criminal Procedure, that it would not grant his emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and thus denies the motion.